IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DON W. LEACH,                                    6:13-CV-00426-BR

       Plaintiff,                        OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

       Defendant.


KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**DREW L. JOHNSON**
1700 Valley River Drive
Eugene, OR 97405
(541) 434-6466

        Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**GERALD J. HILL**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

        Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Don W. Leach seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative

proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on January 6, 2009, alleging a disability onset date of January 1, 2005. Tr. 116-18.[2]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on October 12, 2011.  Tr. 27-60.  At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on December 9, 2011, in which she found Plaintiff was not disabled before his June 30, 2010, date last insured and, therefore, is not entitled to benefits. Tr. 12-20.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on February 6, 2013, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born April 30, 1947, and was 64 years old at the time of the hearing.  Tr. 61.  Plaintiff has a law degree. Tr. 32.  Plaintiff has past relevant work experience as an

---

[2] Citations to the official transcript of record filed by the Commissioner on July 16, 2013, are referred to as "Tr."

3 - OPINION AND ORDER

attorney, human resources coordinator, and property manager.
Tr. 32.

Plaintiff alleges disability prior to his June 30, 2010,
date last insured due to coronary artery disease (CAD), atrial
fibrillation, diabetes mellitus type II, obesity, degenerative
joint disease of both knees, trochanteric bursitis, depression,
and sleep apnea.  Tr. 15.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 17-21.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate his
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d

4 – OPINION AND ORDER

453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the

Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are

enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v.*

*Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in
substantial gainful activity from his January 1, 2005, alleged
onset date through his June 30, 2010, date last insured.  Tr. 13.

At Step Two the ALJ found Plaintiff, before his date last
insured, had the severe impairments of CAD, "atrial fibrillation
on anticoagulation therapy, obesity, status post bilateral knee
replacements, and bilateral trochanteric bursitis." Tr. 13.  The
ALJ found Plaintiff's impairments of mild knee osteoarthritis,
diabetes mellitus type II, and depression were not severe before
Plaintiff's date last insured.  Tr. 13.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments did not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1, before his June 30, 2010, date last insured.
Tr. 14.  The ALJ found Plaintiff, through his date last insured,
had the RFC to perform sedentary work with the following

limitations:  Plaintiff could "not climb ladders, ropes, or scaffolds, kneel, or crawl, and due to anticoagulation therapy he cannot perform work involving power tools or large moving equipment."  Tr. 15.

At Step Four the ALJ concluded Plaintiff was able to perform his past relevant work as an attorney through his June 30, 2010, date last insured.  Tr. 22.  Accordingly, the ALJ found Plaintiff was not disabled through his date last insured.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) improperly rejected Plaintiff's January and June 2009 Statements; (2) improperly failed to address fully the opinion of Plaintiff's treating physician Robert Larson, M.D.; (3) improperly failed to fully address the opinion of reviewing psychologist Marlan Martin, Ph.D.; (4) improperly failed to give great weight to the disability determination of the Veterans Administration (VA); and (5) erred at Step Four when she concluded Plaintiff could perform his past relevant work as a lawyer.

**I.   The ALJ did not err when she partially rejected Plaintiff's January and June 2009 Statements.**

Plaintiff alleges the ALJ erred when she failed to give clear and convincing reasons for partially rejecting Plaintiff's January and June 2009 Statements.

In *Cotton v. Bowen* the Ninth Circuit established two

9 – OPINION AND ORDER

requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

On January 29, 2009, Plaintiff submitted an eight-page typed Adult Function Report in which he stated he wakes between 4:00 and 7:00 a.m.  Plaintiff noted when he wakes at the earlier time he will often "go to the computer to play games, read interesting things, or just read."  Tr. 156.  When he wakes early, Plaintiff sometimes writes "for personal interests" and has to get up after an hour and walk around due to pain in his hips from sitting.

Later in the day, Plaintiff makes telephone calls "to family and friends" and sometimes goes to breakfast with a friend.  Tr. 156. Plaintiff brings in 40-pound bags of pellets for his mother's pellet stove but can no longer bring in three to four bags at a time because "it puts [him] in to what [he] call[s] 'stress.'" Tr. 156.  Plaintiff can drive two to three hours at a time on a good day.  Plaintiff sometimes goes to lunch with a friend, goes to "a lot of movies," and his evenings are "filled with TV and computer games."  Tr. 157.  Specifically Plaintiff noted his "Free Cell game has a current history of 1,044 games. . . .  I try to win 1,000 in a row but the best [he has] been able to do is 641."  Tr. 157.  Plaintiff stated he is an attorney but he does not practice "in part because [he does not] have the funds for the insurance [and] in part because of [his] depression." Tr. 157.  Plaintiff takes "courses that interest" him including an "NRA course," photography, and photoshop.  Plaintiff noted he set up a My Space account but found it "difficult to maintain an interest in such things even though [he has] a desire to be a social animal."  Tr. 157.  Plaintiff stated he does not sleep well due to pain, for example "last night" he "awoke at around 3:01 am and got on the computer for a couple of hours before [he was] able to go back to sleep."  Tr. 158.  Plaintiff drives his mother to her doctor's appointments.  Plaintiff stated "all of [his] problems with personal care come from motivation due to the

depression." Tr. 159.  Plaintiff noted

> I like to write, read, watch TV, play computer
> games, take pictures, enjoy conversation with my
> family and friends, go to dinner, go to the movie
> [sic], to walk in the mall, go to electronic
> stores, shoot pistols, talk politics, talk
> administrative law, observe people, go to church
> (maybe once a month), go to the ocean, go to gun
> and knife shows, go to home shows, go to RV shoes,
> go to the country and state fairs, etc.  With
> those things that involve walking I am very
> careful about the "stress" of working too hard at
> it.  This year I won a ribbon and prize money at
> the county fair with a welded metal sculpture.  It
> took about 40 hours to build over a 3.5 year
> period.

Tr. 160.  Plaintiff spends time "on the phone or on the Internet

with the exceptions of my sons, daughter, their spouses and the

grandchildren."  Tr. 160.  Plaintiff explained his difficulty in

following instructions "seems to stem from not wanting to put up

with other peoples [sic] bull shit as opposed to some form of

mental defect.  Of course there are those who would see this as a

defect anyway, especially in these days of political

correctness."  Tr. 162.

On June 1, 2009, Plaintiff submitted a ten-page typed

Statement in which he noted he had difficulty walking "any

distances.  Some days I can a half mile or more.  Some days I

difficulty [sic] with 100 [feet]."  Tr. 187.  Plaintiff noted he

"wrestle[s] with atrial fibulation" [sic] and as a result he

stopped hunting three to four years earlier and needs to stop and

rest when performing physical activities.  Tr. 189.  Plaintiff

noted he "went fishing yesterday with friends," which involved walking 150 feet from the cabin to the dock and fishing "for about 4 casts of the plug," at which point Plaintiff stopped fishing.  Tr. 189.  Plaintiff stated he suffers "chronic depression" that has "been exacerbated by pain from my knees, hips, and back."  Tr. 190.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] third-party statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."  Tr. 16.  The ALJ noted Plaintiff did not obtain treatment or counseling for his depression or take medication to treat his depression other than one counseling session on February 3, 2011.  The ALJ also noted Plaintiff's wife stated in her February 2, 2009, Third Party Function Report that Plaintiff can stay at his computer for "several hours," cannot lie down for more than three or four hours before he has to sit in a chair "for awhile," carries 40-pound bags of pellets for the stove, shops two to four hours per week, regularly visits with friends and family, and has "no problem with . . . instructions unless the person upsets him." Tr. 169-70.  Plaintiff's wife noted Plaintiff does not have any "real problem with direct authority figures" but sometimes he "overreacts with stressed and gets very angry."  Tr. 171.  The

ALJ also noted Plaintiff was able to prepare the two detailed and lengthy personal statements as well as a detailed letter to his doctor about medication changes and coordinating care.  Tr. 15-16.

On this record the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony was not entirely credible as to the intensity, persistence, and limiting effects of her conditions.  The Court, therefore, concludes the ALJ did not err when she rejected Plaintiff's testimony in part.

## II.  The ALJ erred when she failed to address fully the opinion of Dr. Larson.

Plaintiff asserts the ALJ erred when she failed to address fully the February 2005 opinion of Dr. Larson, treating physician.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so.that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

14 - OPINION AND ORDER

On February 14, 2005, Dr. Larson wrote a letter to the Oregon Department of Human Services (DHS) in which he noted Plaintiff suffers from diabetes mellitus, hypertension, and "symptomatic chest pain related to coronary artery disease." Tr. 334.  Dr. Larson advised the DHS that Plaintiff "has developed a significant reduction in his ability to do any physical labor or even to do heavy office work" and that it was not "advisable" for Plaintiff "to begin any sort of profession that would involve psychological stress or physical activity due to his known severe inoperable multivessel coronary artery disease."  Tr. 334.  Dr. Larson opined Plaintiff did not have any limitations with sitting, standing, or "performing mental activities," however, Plaintiff did have "significant difficulty lifting, carrying, or walking any great period."  Tr. 334.  In summary, Dr. Larson noted his "[p]rimary concern for [Plaintiff] is that his life work as a lawyer has been very stressful and . . . this continued psychological stress could aggravate his condition."  Tr. 334.  Dr. Larson also stated in a February 2, 2005, chart note that Plaintiff should not have any "excessive emotional stress . . . for any job activity."  T. 335-36.

The ALJ stated she gave Dr. Larson's opinion "great weight" as to Plaintiff's "functional limitations."  Tr. 18.  Plaintiff asserts the ALJ, nevertheless, implicitly rejected Dr. Larson's opinion that Plaintiff should avoid professions that involve

psychological stress because she failed to include any
limitations in Plaintiff's RFC related to excessive psychological
stress and concluded Plaintiff could perform his past relevant
work as a lawyer.

Defendant notes the ALJ properly declined to accept
Dr. Larson's opinion on the question whether Plaintiff could
perform his past work as a lawyer because that question is
reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d).
Defendant also asserts Dr. Larson did not have any personal
knowledge regarding whether Plaintiff's work as a lawyer had been
unduly stressful because at the time he was treated by
Dr. Larson, Plaintiff had not been working as a lawyer for
approximately six years.

The record, however, reflects Dr. Larson's February 2, 2005,
chart note in which he advised "no excessive emotional stress
recommended for any job activity" occurred because Plaintiff
reported stress with job interviews that resulted in tightening
in his chest, problems breathing, and anxiety.  In addition, the
ALJ did not offer any reason for rejecting the portion of
Dr. Larson's opinion in which he asserted Plaintiff should not
work in jobs with excessive emotional stress.

The Court concludes on this record that the ALJ erred when
she implicitly rejected the portion of Dr. Larson's opinion in
which he opined Plaintiff should not work in jobs that involve

excessive psychological stress.

**III.  The ALJ erred when she failed to fully address the opinion of Dr. Martin**

Plaintiff contends the ALJ erred when she failed to address fully the opinion of Dr. Martin, reviewing psychologist.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Trego v. Astrue*, 350 F. App'x 158, 159 (9th Cir. 2009)(quotation omitted).  The ALJ "may reject the opinion of a nonexamining physician by reference to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  *See also Manzo v. Social Sec. Admin.*, No. 10-CV-1062-HZ, 2011 WL 4828818, at *7 (D. Or. Oct 11, 2011)(same).

On June 8, 2011, Dr. Martin reviewed Plaintiff's medical record and opined Plaintiff before his June 30, 2010, date last insured did not have any restrictions in his activities of daily living, had mild to moderate limitations in maintaining social functioning, and had mild difficulty with concentration. Dr. Martin also opined Plaintiff had moderate limitations in his ability to interact appropriately with the public and supervisors before his date last insured.  Tr. 838, 844.  The ALJ gave "significant weight" to the portion of Dr. Martin's opinion in

which she concluded Plaintiff did not have any restrictions
before his date last insured in his activities of daily living,
had mild to moderate limitations in maintaining social
functioning, and had mild difficulty with concentration.    Tr. 21.
The ALJ, however, failed to address Dr. Martin's opinion that
Plaintiff also had moderate limitations before his date last
insured in his ability to interact appropriately with the public
and supervisors and did not include any limitations in
Plaintiff's RFC related to limitations in interacting with the
public and supervisors.    In fact, the Dictionary of Occupational
Titles (DOT) notes the practice of law involves significant
interaction with people including influencing their opinions,
attitudes and judgments.    DOT 110.107-010.

The Court concludes on this record that the ALJ erred when
she failed to address the portion of Dr. Martin's opinion in
which she opined Plaintiff had moderate limitations before his
June 30, 2010, date last insured in his ability to interact
appropriately with the public and supervisors because she failed
to provide any reason with reference to specific evidence in the
medical record for doing so.

**IV.    The ALJ erred when she failed to give "great weight" to the
VA's determination that Plaintiff was disabled by severe
depression.**

A Social Security disability determination is similar to a
VA disability determination in that both are made by federal

18 - OPINION AND ORDER

agencies that provide benefits to those who cannot work due to disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "[A]lthough a VA rating of disability does not necessarily compel the SSA to reach an identical result, 20 C.F.R. § 404.1504, the ALJ must consider the VA's finding in reaching his decision." *Id.* An ALJ ordinarily must give "great weight" to a VA determination of disability. An ALJ, however, is not compelled to reach an identical result. *Id. See also* 20 C.F.R. § 404.1504 ("A decision by any . . . other governmental agency about whether you are disabled . . . is based on its rules and is not our decision . . . . We must make a . . . determination based on social security law. Therefore, a determination made by another agency . . . is not binding on us."). If the ALJ gives less than "great weight" to a VA disability determination, however, he must provide "persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey*, 298 F.3d at 1076.

On July 18, 2008, Dr. Turner conducted a psychological evaluation of Plaintiff for the VA. Dr. Turner diagnosed Plaintiff with "very severe" chronic pain; major, recurrent, severe depression secondary to chronic pain; and moderately severe anxiety. Tr. 591. Dr. Turner assessed a GAF of 40.[3]

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of social, occupational, and

On May 2, 2011, Dr. Turner conducted a second psychological evaluation of Plaintiff for the VA.   Dr. Turner diagnosed Plaintiff with very severe" chronic pain with medical and psychological factors; major, recurrent, "extremely severe" depression secondary to chronic pain; and moderately severe anxiety.   Tr. 831.   Dr. Turner assessed Plaintiff with a GAF of 40.   Dr. Turner opined it was "more likely than not, that [Plaintiff's] disabilities are total and permanent."   Tr. 831.

The ALJ gave the VA determination and the assessments of Dr. Turner "very little weight."   Tr. 19.   The ALJ noted Dr. Martin reviewed Plaintiff's medical record including the VA assessment and concluded the VA assessment was not supported by the medical record.   Specifically Dr. Martin noted

> most of the medical record do not indicate
> symptoms of depression.  There are "Depression
> Screens" in the VA records and many of them are
> negative for depression. . . .  In the records
> from Dr. Larson, there is one note on 9/25/2007
> which indicated that [Plaintiff] reported chronic
> depression for many years. . . .  He was not
> taking psychotropic medication.  A rating scale
> indicated mild depression and there was a
> diagnosis of Major Depression, Single Episode.
> There was a prescription for anti-depressant
> medication, but there is no subsequent record

psychological functioning on a scale of 1 to 100.  Am. Psych.
Ass'n, *Diagnostic and Statistical Manual of Mental Disorders IV*
(DSM-IV) 31-34 (4th ed. 2000).  A GAF of 40 indicates serious
symptoms (suicidal ideation, severe obsessional rituals, frequent
shoplifting) or a serious impairment in social, occupational, or
school functioning (*e.g.*, few friends, unable to keep a job).
*Id.*

indicating that [Plaintiff] was taking the
medication.

Tr. 20, 836.  The ALJ also notes the record reflects Plaintiff
never had any in-patient hospitalizations for psychiatric
treatment and even after Dr. Turner's 2008 diagnosis, Plaintiff
did not obtain treatment for depression.  The record indicates
Plaintiff sought mental-health counseling in November 2009 and
had one session of counseling in February 2011.  The record does
not reflect any other mental-health counseling received by
Plaintiff.

The ALJ also noted the diagnostic tests on which Dr. Turner
relied in reaching his conclusion (the mini-mental status
examination and the Beck Depression and Anxiety Inventories) are
based on Plaintiff's self-reports of symptoms.

Finally, the ALJ noted Plaintiff's reported activities in
the record did not support a finding that he suffered severe
depression before his June 30, 2010, date last insured.  For
example, in January 2006, Plaintiff reported to Dr. Larson that
he had "started working as a lawyer again, opened office to
practice recently."  Tr. 321.  At the January 2006 appointment,
the only psychological symptom Dr. Larson reported Plaintiff was
suffering was "anxiety with persistent worry about heart
problems."  Tr. 321.  In February 2006 Plaintiff's treating
cardiologist James Lowry, M.D., reported Plaintiff was "feeling

slowly better" and had stopped "drinking pop, resumed walking a
quarter to half a mile at an easy pace and was planning to
increase that." Tr. 282. Dr. Lowry noted Plaintiff had

> set up his law practice again just for a very low
> volume workload at first. He is hoping to begin
> making some money that way and he is also
> expecting some income from real estate
> transactions . . . so this seems to have added a
> bit of stress to his life, but also perhaps he is
> feeling better about his financial security.

Tr. 282.

In July 2007 Plaintiff had cataract surgery on his right eye
and a depression screen was negative. Tr. 413. In September
2007 Dr. Larson noted Plaintiff's psychometric hamilton
depression rating scale zung adjusted score was 50, which
indicated mild depression. Tr. 300.

Nevertheless, the record does not contain a comprehensive
analysis of Plaintiff's mental health by any examining or
treating physician other than the psychological examinations
conducted by Dr. Turner in 2008 and 2011. Dr. Martin is a
reviewing psychologist, not a treating physician. Dr. Turner's
opinion is not contradicted by any treating or examining
physicians. The ALJ, therefore, must provide clear and
convincing reasons to reject the opinion of Dr. Turner. In
addition, when the ALJ gives less than "great weight" to a VA
disability determination, she must provide "persuasive, specific,
valid reasons for doing so that are supported by the record."

22 - OPINION AND ORDER

*McCartey*, 298 F.3d at 1076.  The Court concludes the ALJ has not

done so.  The ALJ points to various medical records reporting

Plaintiff's mental health prior to Dr. Turner's 2008 evaluation.

The record reflects Plaintiff started to suffer higher and more

frequent levels of chronic pain and, therefore, more acute levels

of depression in 2008 through his June 30, 2010, date last

insured.  In addition, the fact that Dr. Turner's diagnosis was

based in part on Plaintiff's self-reported symptoms is not, in

itself, a sufficient basis to reject Dr. Turner's opinion or the

VA determination of disablity.  As one court explained:

> Psychiatric impairments are not as readily
> amenable to substantiation by objective laboratory
> testing as are medical impairments and
> consequently, the diagnostic techniques employed
> in the field of psychiatry may be less tangible
> than those in the field of medicine. . . .  Mental
> disorders cannot be ascertained and verified as
> are most physical illnesses, for the mind cannot
> be probed by mechanical devices in order to obtain
> objective clinical manifestations of mental
> illness. . . .  A strict reading of the statutory
> requirement that an impairment be 'demonstrable by
> medically acceptable clinical and laboratory
> diagnostic techniques' is inappropriate in the
> context of mental illnesses. . . .  Thus, when
> mental illness is the basis of a disability claim
> . . . clinical and laboratory data may consist of
> the diagnoses and observations of . . .
> psychologists.

*Hartman v. Bowen*, 636 F.Supp. 129, 131-32 (N.D. Cal. 1986).

On this record the Court concludes the ALJ erred when she

did not give great weight to Dr. Turner's opinion and the VA's

conclusion that Plaintiff was disabled by severe depression.

V.    **The ALJ erred at Step Four.**

Plaintiff contends the ALJ erred at Step Four when she concluded Plaintiff before his June 30, 2010, date last insured could perform his past relevant work as a lawyer because the ALJ did not consider all of Plaintiff's limitations.  The Court has concluded the ALJ erred when she failed to fully consider the opinions of Drs. Larson and Martin and did not give great weight to the VA's disability determination.  The Court, therefore, also concludes the ALJ erred when she concluded at Step Four that Plaintiff could perform his past relevant work as an attorney before his June 30, 2010, date last insured because the ALJ failed to include all of the limitations in Plaintiff's RFC that were supported on this record.


<u>REMAND</u>

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within
the discretion of the court.  *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman*, 211 F.3d at 1178.  The
Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

The ALJ did not pose any hypothetical to the VE and did not
consider all of Plaintiff's limitations set out by Drs. Larson
and Martin and the VA.  The Court, therefore, cannot determine

whether substantial evidence would support the ALJ's finding that Plaintiff can perform his past relevant work if the ALJ considered all of the limitations set out in the opinions of Drs. Larson and Martin and by the VA.  The Court also cannot determine whether Plaintiff before his date last insured could perform other work in the national economy.  The Court, therefore, concludes this matter must be remanded.

Accordingly, the Court remands this matter for further administrative proceedings consistent with this Opinion and Order specifically to allow the ALJ to reevaluate Plaintiff's limitations, to pose a hypothetical to the VE that includes any limitations identified by the ALJ in her reevaluation, and to obtain additional testimony from the VE.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 15th day of April, 2014.

ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER